UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JOHN GLENN HOUTSMA,

Plaintiff,

v. Case No. 2:26-cv-2090-SPC-KRH

CAPTAIN KILGO, et al.,

Defendants.
_______________________________/

**OPINION AND ORDER**

Plaintiff John Glenn Houtsma, a civilly-committed resident of the Florida Civil Commitment Center (FCCC) has filed a *pro se* civil rights complaint against six employees of the facility. (Doc. 1). Houtsma generally asserts that Defendant Kilgo read a piece of his outgoing mail, and that he received a Behavior Management Report (BMR) based upon the mail's contents. (*Id.*) Houtsma seeks leave to proceed *in forma pauperis* (Doc. 1), and the complaint is before the Court on initial screening.[1]

---

[1] A plaintiff seeking to proceed *in forma pauperis* will have his complaint screened in accordance with the provisions of 28 U.S.C. § 1915(e)(2)(B). This screening procedure requires the Court to dismiss a civil action prior to service of process if it determines that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Despite the plaintiff's non-prisoner status, his amended complaint is subject to initial review under 28 U.S.C. § 1915(e)(2)(B). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (recognizing that the district court did not err when it reviewed a complaint filed by a civil detainee under section 1915(e)(2)(B)).

Upon review, the Court dismisses the complaint without prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) for failure to state a claim on which relief may be granted.

**Complaint**

Houtsma is detained at the FCCC, having been deemed a sexually violent predator by a Florida court.[2] Defendants Kilgo, Brown, Cardenes, Mercado, Moore, and Rooks are employees of the facility.

Houtsma asserts that Defendant Captain Kilgo opened a piece of his (Houtsma's) outgoing mail on June 19, 2025. (Doc. 1 at 5). The mail was addressed to a church, but Kilgo reported that the letter contained Houtsma's picture and requested "money, clothes, packages, and legal help." (*Id.* at 14). Houtsma's letter also stated that it was from the "John Glen[n] Houtsma Foundation." (*Id.*) As a result of the letter, Houtsma was charged with "Operating a Business," which is a major rule violation at the FCCC. (*Id.* at 13). Houtsma attached the "Behavior Management Hearing Disposition" (Hearing Report) to his complaint. (*Id.* at 15). In the "Details" section, the Hearing Report stated:

[2] Under the Sexually Violent Predators Act, a person found to be a sexually violent predator must be housed in a secure facility "for control, care, treatment, and rehabilitation of criminal offenders, until such time as the person's mental abnormality or personality disorder has so changed that it is safe for the person to be at large." Fla. Stat. § 394.917(2).

> Mr. Houtsma provided the following statement: "I plead not guilty because how this information was obtained was illegal." He claimed it was found in his absence; however, he was informed of the policy. In addition, he admitted that while it indicated it was "legal," it was not legal documentation. He indicated, "all I was doing was real helping with this church." When brought to his attention that the documentation found in his possession included "foundation," he stated, "Well, I could have removed the word foundation."

(*Id.* at 15). The Behavior Management Panel, consisting of Defendants Mercado, Moore, and Rooks, found "enough evidence to support [the] charge" against Houtsma, and he was sanctioned to a "CARE Level Restart." (*Id.* at 15–16).

Houtsma asks that the defendants be charged with crimes.[3] (Doc. 1 at 8). He also seeks monetary damages, a job in the pet room, and a Care Level 5. (*Id.*)

**Discussion**

The Court liberally construes Houtsma's complaint as raising three claims. He first argues that—because his confiscated letter was addressed to a church—Kilgo violated his freedom of religion by opening it. (Doc. 1 at 5).

---

[3] "It is well established that private citizens can neither bring a direct criminal action against another person nor can they petition the federal courts to compel the criminal prosecution of another person." *Ellen v. Stamm*, 951 F.2d 359 (9th Cir. 1991); s*ee also Maine v. Taylor*, 477 U.S. 131, 137 (1986) ("[P]rivate parties, and perhaps even separate sovereigns, have no legally cognizable interest in the prosecutorial decisions of the Federal Government."); *Leeke v. Timmerman*, 454 U.S. 83, 86–87 (1981) ("a private citizen lacks a judicially cognizable interest in the prosecution or non[-]prosecution of another"). Thus, the Court cannot grant this relief, and the request will not be further discussed.

Next, Houtsma argues that the First Amendment bars FCCC officials from reading his outgoing mail absent a "reasonable suspicion of illegal activity." (*Id.* at 6). Finally, Houtsma argues that his procedural due process rights were violated at the BMR Hearing because he is "entitled the limited right to call witnesses and ask why my mail was opened without me there." (*Id.* at 7).[4]

As explained below, the Court concludes that Houtsma has not stated a claim on which relief may be granted, and the complaint must be dismissed. Generally, the Court allows a *pro se* plaintiff at least one opportunity to amend his complaint unless doing so would be futile. Under the facts alleged here, an amended complaint would still be properly dismissed on initial screening. Thus, the dismissal is without leave to amend. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed[.]").

**A. Houtsma's complaint does not state a claim based upon a violation of his free exercise of religion.**

To the extent Houtsma argues that Kilgo impinged upon his free exercise of religion simply by reading a letter that was addressed to a church, the claim

[4] Houtsma's complaint is not a model of clarity. To the extent he intended to raise additional claims, they are dismissed without prejudice under Rules 8 and 10 of the Federal Rules of Civil Procedure and under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim on which relief may be granted.

fails. To demonstrate a violation of his right to freely exercise his religious beliefs, Houtsma must first establish that a state actor imposed a "substantial burden" on his practice of religion. *Church of Scientology Flag Serv. Org., Inc. v. City of Clearwater*, 2 F.3d 1514, 1549 (11th Cir. 1993). To prove that his religious exercise was substantially burdened under the First Amendment or the Religious Land Use and Institutionalized Persons Act (RLUIPA), Houtsma must present evidence that he was coerced to perform conduct that his religion forbids or prevented from performing conduct that his religion requires. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004) (concluding that, under RLUIPA, "a 'substantial burden' is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."). At the very least, "a 'substantial burden' must place more than an inconvenience on religious exercise." *Midrash*, 366 F.3d at 1227 (11th Cir. 2004).

Here, Houtsma has not even alleged that Kilgo's reading of his letter placed a substantial burden on his religious practice. He does not assert that sending private solicitation letters to a church is mandated by his religion or explain how he was prevented from expressing his sincerely held religious beliefs by the FCCC's rule against residents operating a business. In short,

that the letter at issue was addressed to a church was, standing alone, insufficient to implicate the RLUIPA or the First Amendment.[5]

### B. Houtsma's complaint does not state a First Amendment claim based upon Kilgo opening or reading his outgoing letter.

Houtsma alleges that Kilgo opened, and presumably read, a non-legal letter outside of his presence.[6] The letter solicited money for the "John Houtsma Foundation," and the defendants interpreted the letter's contents as showing that Houtsma was operating a business. Houtsma does not independently describe the letter's contents (other than stating that it was addressed to a church) and fails to explain how Kilgo's opening interfered with his First Amendment ability to communicate.

---

[5] The RLUIPA provides greater protection than the First Amendment, so if a claim fails under the RLUIPA, it necessarily fails under the First Amendment. *Dorman v. Aronofsky*, 36 F.4th 1306, 1313 (11th Cir. 2022).

[6] The Hearing Report, attached to Houtsma's complaint, indicated that Houtsma "admitted that while [the letter] indicated it was 'legal,' it was not legal documentation." (Doc. 1 at 15). To the extent Houtsma argues that merely marking non-legal mail as "legal" protects it from review under the constitution, he is wrong. "The constitutional interest, to the extent there is one, is in officials not being able to read privileged or confidential information—not simply the failure to follow the procedures employed to help insure this does not take place." *Moore v. Hoeven*, No. 1:08-cv-028, 2008 WL 1902451, at *12 (n.13 (D. North Dakota, Apr 28, 2008); *see also Kaufman v. McCaughtry*, 419 F.3d 678, 656–658 (7th Cir. 2005) (stating that prison officials who open mail marked with an attorney's name and a warning that the mail is confidential may "potentially" violate the prisoner's rights if opened outside his presence but the court still must find that the contents of the mail were in fact privileged to qualify as "legal" mail). Under these circumstances, it is undisputable that Houtsma's solicitation to a church was not "legal mail."

In *Procunier v. Martinez*, 416 U.S. 396 (1974), the Supreme Court held that a regulation on an inmate's outgoing mail must "be 'generally necessary' to a legitimate governmental interest." *Thornburgh v. Abbott*, 490 U.S. 401, 411 (1989). The *Martinez* Court observed that unlike incoming mail, "outgoing personal correspondence from prisoners did not, by its very nature, pose a serious threat to prison order and security." *Id.* The same reasoning applies to mail sent by residents of the FCCC.[7]

But here, Houtsma does not argue that Kilgo opened his mail pursuant to an unconstitutional regulation. Instead, he suggests that Kilgo operated *outside* the rules when he read the letter. And it is well settled that "an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003); *Pro v. Bandy*, No. 2:08-cv-0175-RWS, 2008 WL 4445080, at *3 (N.D. Ga. Sept.

[7] The Court recognizes that Plaintiff is not a prisoner. The Supreme Court has concluded that, as a general rule, civil detainees are "entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). The Eleventh Circuit has similarly held that "*Youngberg* establishes that the due process rights of the involuntarily civilly committed are at least as extensive as the Eighth Amendment rights of the criminally institutionalized, and therefore, relevant case law in the Eighth Amendment context also serves to set forth the contours of the due process rights of the civilly committed." *Lavender v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006) (quoting *Dolihite v. Maughon*, 74 F.3d 1027, 1041 (11th Cir. 1996) (quotation marks omitted)). Therefore, the case law that has developed in the prison context also sets forth the contours of the due process rights of the civilly committed. *Id.*

25, 2008) ( "[A]llegations of sporadic interference with incoming mail are insufficient to state a First Amendment claim[.]"). Rather, the inmate must show that a prison official "regularly and unjustifiably interfered" with the detainee's mail. *Davis*, 320 F.3d at 351. Houtsma's allegations do not reflect that Kilgo (or any other FCCC employee) "regularly and unjustifiably" interfered with his mail. Thus, any claim against Kilgo based upon a violation of the First Amendment is dismissed for failure to state a claim upon which relief may be granted.

Houtsma fares no better if the Court liberally frames his claims as raised under the Fourth Amendment's prohibition against unreasonable searches or seizures. The Fourth Amendment safeguards "'[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. But "given the realities of institutional confinement, any reasonable expectation of privacy that a detainee retain[s] necessarily . . . [is] of a diminished scope." *Bell v. Wolfish*, 441 U.S. 520, 557 (1979). Consequently, as to non-legal mail, courts have held:

> Nonlegal mail. . . may "properly be subjected to much greater control" in prisons than legal mail. *Busby v. Dretke*, 359 F.3d 708, 721 (5th Cir. 2004) (citing *Guajardo v. Estelle*, 580 F.2d 748, 755 n.4, 756–59 (5th Cir. 1978)). We have held prison officials may "read all incoming and outgoing general correspondence" and even "turn[ ] letters over to the prosecutors if the jailers happened to find valuable evidence during their routine monitoring" without

> violating a prisoner's First Amendment rights. *Id.* (citing *Gassler v. Wood*, 14 F.3d 406, 408–10 (8th Cir. 1994)). The same is true of a prisoner's Fourth Amendment rights. *Id.* at 716 (citing *Stroud v. United States*, 251 U.S. 15, 21–22 (1919)).

*Bell v. State Prison Offs.*, No. 23-30339, 2024 WL 2863293, at *4 (5th Cir. June 6, 2024); *see also Ford v. Forsyth Cnty. Sheriff Dep't,* No. 1:21CV557, 2023 WL 2049286, at *2 (M.D.N.C. Feb. 16, 2023) (collecting cases and concluding the plaintiff failed to state a claim on which relief may be granted against officials for creating and enforcing policies that allowed his incoming and outgoing non-legal mail to be searched and transmitted to investigating officers and prosecutors because "there is no Fourth Amendment violation in the opening and inspecting of [an inmate's] non-privileged mail"); *Loiseau v. Norris*, No. 3:10CV870, 2011 WL 4102226, at *3 (E.D. Va. Sept. 14, 2011) (dismissing under 28 U.S.C. § 1915 an inmate's Fourth Amendment claim predicated on an officer's opening, reading, copying, and disseminating the plaintiff's mail to prosecutor because "[p]risoners have no reasonable expectation of privacy to non-privileged mail.") (citations omitted).

In short, because Houtsma did not have a reasonable expectation of privacy in his non-legal mail, no violation of his Fourth Amendment right against unreasonable searches and seizures occurred. Thus, he has failed to state a Fourth Amendment claim upon which relief may be granted.

**C. Houtsma's complaint does not state a procedural due process claim.**

Houtsma asserts that he was denied due process during the BMR Hearing because he was not allowed to ask why his mail was opened outside his presence. (Doc. 1 at 7). In *Wolff v. McDonnell*, 418 U.S. 539 (1974), the United States Supreme Court described the minimum due process requirements for prisoners who receive discipline that results in the loss of good-time credits or the imposition of solitary confinement. These protections include advance written notice of the charges, adequate time to prepare a defense, an opportunity to present witnesses and evidence, and a written statement by the factfinder explaining the reasons for the decision. *Id.* In addition, the decision-maker must be sufficiently impartial so as not to present "a hazard of arbitrary decisionmaking." *Id.* at 571.

Notably, even a defendant's failure to comply with these procedural protections does not automatically give rise to a due process claim. The Supreme Court has explained that *Wolff* due process claims are limited to situations where a defendant's actions caused an "atypical significant deprivation" in which a State might conceivably have created a liberty interest. *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). In other words, a defendant's failure to follow each *Wolff* procedural requirement violates the Constitution only when the failure resulted in the deprivation of the plaintiff's interest in

life, liberty, or property. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The 14th Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake.") Moreover, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board [to impose a penalty.]" *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985).

Here, it is unnecessary for the Court to consider whether Houtsma received sufficient notice, adequate time to prepare a defense, or sufficient opportunity to present witnesses and evidence or whether a reduction in his care level implicated a liberty interest under the Due Process Clause. This is because Houtsma does not even argue that there was no evidence to support the charge against him—only that he did not believe that Kilgo had the right to gather that evidence. Thus, his due process claim fails at the outset due to the presence of "some evidence" to support the Behavior Management Panel's ruling. *Hill*, 472 U.S. at 455.

Moreover, to the extent Houtsma argues that the evidence used to substantiate the charge against him was illegally gathered—and should not have been considered by the Panel in the first place—the claim is premature under *Heck v. Humphrey*, 512 U.S. 477 (1994). *Heck* held that "a plaintiff cannot maintain a § 1983 suit if a favorable ruling would undermine or

invalidate the plaintiff's conviction or sentence . . . unless and until the conviction has been ruled invalid." *Hall v. Porfert*, No. 22-12184, 2023 WL 6274833, at *1 (M.D. Fla. Sept. 26, 2023) (applying the *Heck* doctrine to FCCC residents). A ruling from this Court that Houtsma's letter (the only evidence presented) should not have been considered by the Behavior Management Panel would imply that the results of the BMR Hearing was invalid. However, the results of his Hearing have not been overturned. Thus, *Heck* bars Houtsma's procedural due process attack on the disciplinary proceedings.

**Conclusion**

Houtsma does not state a § 1983 claim under any theory the Court can reasonably apply to his complaint. Moreover, the Court finds that, on the facts alleged here, amendment would be futile.

Accordingly, it is now **ORDERED:**

1. Houtsma's complaint (Doc. 1) is **DISMISSED without prejudice.**

2. The Clerk is **DIRECTED** to terminate any pending motions, close this case, and enter judgment accordingly.

**DONE** and **ORDERED** in Fort Myers, Florida on August 31, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties or Record